PEOPLE v BAKER

PEOPLE v RICHARDSON

Docket Nos. 78-1677, 44531. Submitted October 19, 1979, at Detroit.—
    Decided December 18, 1979. Leave to appeal denied, 408 Mich
    925.

    Norma Baker and Norman Richardson were tried jointly in
    Recorder's Court of Detroit, Geraldine B. Ford, J. Defendant
    Baker was convicted of first-degree murder, second-degree mur-
    der and conspiracy to commit murder in the first-degree. Defen-
    dant Richardson was convicted by the same jury of first-degree
    murder, conspiracy to commit first-degree murder and violation
    of the felony-firearm statute. Defendants appeal. The Court of
    Appeals consolidated the appeals, on its own motion, for the
    purpose of hearing on the merits. Defendants allege that (1) the
    trial court erred in excluding the testimony of an eyewitness's
    optometrist on the basis of an optometrist-patient privilege, and
    (2) the trial court erred in allowing the prosecution to read an
    extrajudicial statement of a dead witness into the record. *Held:*

    1. An optometrist's information is not privileged under ad-
    ministrative rules which provide ethical standards for optome-
    trists, including a requirement that all information concerning
    a patient shall be held in confidence. The fact that disclosing
    information concerning a patient is unethical does not mean
    that such testimony is privileged. There is no such privilege
    either at common law or by statute. A physician-patient privi-
    lege does apply to persons duly authorized to practice medicine
    or surgery but an optometrist is not duly authorized to practice
    medicine or surgery. The trial court should not have excluded
    this testimony on the basis of the rule.

    2. Extrajudicial statements of deceased witnesses should not
    be admitted into evidence where they place a defendant's rights
    in jeopardy without serving any legitimate purpose. The state-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians, Surgeons, and other Healers §§ 25, 101.
    81 Am Jur 2d, Witnesses § 237.
[2] 21 Am Jur 2d, Criminal Law § 333 *et seq.*
    29 Am Jur 2d, Evidence § 610.
    81 Am Jur 2d, Witnesses § 464 *et seq.*

ment which strongly implicated both defendants in the killings was controversial, unnecessary and highly prejudicial. Defendants were denied the right of confrontation in cross-examination of witnesses in the presence of the jury, which is a fundamental requirement of a fair trial. Although the trial judge instructed the jury that the extrajudicial statement was not to be considered to prove that defendants had committed the murders, there is a substantial risk that the jury, despite instructions to the contrary, looked to the incriminating statement in determining defendants' guilt. The trial court should not have admitted the statement.

Reversed and remanded.

1. EVIDENCE — OPTOMETRISTS — PRIVILEGE — PHYSICIAN-PATIENT PRIVILEGE.

Optometrists cannot refuse to testify concerning a patient on the basis of an optometrist-patient privilege; there is no statutory or common-law basis for such a privilege and although such testimony may be unethical it is not privileged.

2. EVIDENCE — EXTRAJUDICIAL STATEMENTS — ADMISSIBILITY — PREJUDICE — CROSS-EXAMINATION — FAIR TRIAL.

An extrajudicial statement of a deceased witness should not be read into the trial record because it places a defendant's right of confrontation in cross-examination in jeopardy without serving any legitimate purpose; there is a substantial risk that the jury, despite instructions to the contrary, will look to the incriminating extrajudicial statement in determining the defendant's guilt; the rights of confrontation in cross-examination of the witness in the presence of the trier of fact, a fundamental requirement of a fair trial, cannot be fulfilled.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy Scallen* and *Michael D. Lehto,* Assistant Prosecuting Attorneys, for the people.

*Bruce T. Leitman, P.C.,* for defendant Baker.

*Robert E. Slameka,* for defendant Richardson.

Before: Danhof, C.J., and J. H. Gillis and D. C. Riley, JJ.

Per Curiam. Defendant Baker was convicted by a jury of first-degree murder in the death of Jay Baker, contrary to MCL 750.316; MSA 28.548, second-degree murder in the death of John Moore, contrary to MCL 750.317; MSA 28.549, and conspiracy to commit murder in the first degree, contrary to MCL 750.157a; MSA 28.354(1) and MCL 750.316; MSA 28.548. She was sentenced to serve two natural life sentences and 40 to 60 years on the second-degree murder count. Defendant Richardson was convicted by the same jury of two counts of first-degree murder in connection with the deaths of Jay Baker and John Moore, conspiracy to commit first-degree murder, and felony-firearm, contrary to MCL 750.227b; MSA 28.424(2). He was sentenced to three life sentences and the mandatory two years on the felony-firearm count. They appeal as of right.

Defendants raise numerous issues on this appeal, two of which we find meritorious.

Defendants argue that the trial court erred in excluding the testimony of an eye witness's optometrist on the basis of an optometrist-patient privilege. Robert Baughman was the only eye witness who identified Norman Richardson as the gunman at the May 12, 1977, shootings. Defendants planned on calling the optometrist to testify as to Baughman's inability to see based on an eye examination two months after the shootings.

In holding that the optometrist's information was privileged the trial court relied on 1956 AACS, R 338.291 which provides ethical standards for optometrists, including a requirement that all information concerning a patient shall be held in confidence.

We hold that the trial court erred in applying this ethical standard as an evidentiary privilege. The fact that disclosing information concerning a patient is unethical does not mean that such testimony is privileged. There is no common law optometrist-patient privilege. Nor does the statutorily created physician-patient privilege apply; that privilege applies to persons duly authorized to practice medicine or surgery. MCL 600.2157; MSA 27A.2157. An optometrist is not duly authorized to practice medicine or surgery. The trial court should not have excluded this testimony.

Defendants also argue that the trial court erred in allowing the prosecution to read the extrajudicial statement of a dead witness into the record. Late in the people's case in chief, Ronald Schigur, the assistant Wayne County prosecuting attorney who originally handled the case, was called to testify as to why one Pete Simpson was promised he would not be prosecuted if he would agree to testify at trial. After cross-examination, Schigur was permitted, over objection, to read a written statement taken from William Suggs by the police on August 9, 1977. This statement strongly implicated both defendants in the killings. The trial judge admitted this statement because she felt defense counsel had "opened the door" by implying that the people had relied solely on the testimony of Pete Simpson in electing to prosecute defendants.

We hold that the trial court erred in admitting this highly prejudicial evidence. A careful reading of the cross-examination reveals no questioning of the prosecutor's justifications for bringing the case to trial. Defendants sought to show that Simpson was granted "immunity" because he had friends in authority, not because his story was necessarily

true. It was also suggested that Simpson, being involved in the killings, had a motive to lie. While the trial judge instructed the jury that Suggs' statement was not to be considered to prove that defendants had committed the murders, there is a substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statement in determining defendants' guilt. See *Bruton v United States,* 391 US 123, 126; 88 S Ct 1260; 20 L Ed 2d 476 (1968).

The rights of confrontation in cross-examination are fundamental requirements of a fair trial. See *People v Hollingsworth,* 22 Mich App 545, 547; 177 NW2d 687 (1970), Const 1963, art 1, § 20.

The primary goal of the confrontation clause is to prevent the use of *ex parte* affidavits or depositions against the accused in lieu of personal examination and cross-examination of witnesses in the presence of the trier of fact. *People v Triplett,* 68 Mich App 531, 539; 243 NW2d 665 (1976). These rights were placed in jeopardy by the admission of Suggs' statement, without serving any legitimate purpose.

Defendants' convictions must be reversed and defendants remanded for a new trial.

Reversed and remanded.