DAIMLER CHRYSLER CORP.,
Appellants–Plaintiffs,

v.

GRAVES SHEET METAL and R.H.
Marlin, Inc., Appellee–
Defendants.

No. 34A04–0407–CV–376.

Court of Appeals of Indiana.

May 19, 2005.

Kimbley A. Kearney, Celeste A. Hill, James J. Bigoness, Clausen Miller, P.C., Chicago, IL, Nelson Nettles, Richard L. Norris, Norris, Choplin & Schroder, LLP, Indianapolis, IN, Attorneys for Appellant.

Dane L. Tubergen, Scott L. Bunnell, Fort Wayne, IN, Attorneys for Appellee.

Steven E. Springer, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellee R.H. Marlin, Inc.

## OPINION

ROBB, Judge.

Daimler Chrysler Corporation ("Chrysler") filed suit against Graves Sheet Metal Company, Inc. ("Graves") and R.H. Marlin, Inc. ("Marlin") in a construction contract dispute. The trial court granted Graves and Marlin's joint motion for summary judgment, and Chrysler now appeals. We affirm in part and reverse and remand in part.[1]

### Issue

Chrysler raises four issues for our review, which we consolidate and restate as whether the trial court properly granted Graves and Marlin's joint motion for summary judgment.

### Facts and Procedural History

Chrysler manufactures automobiles and automobile parts at a facility located in Kokomo, Indiana. Graves is a commercial sheet metal contractor. In March, 1998, Graves entered into a contract with Chrysler whereby Graves agreed to perform a ventilation upgrade to the casting plant at Chrysler's facility in Kokomo. The contract included a section entitled "General Conditions for Construction Contracts." Paragraph Twenty–Five of the contract, labeled "Accident Prevention," stated the following, in pertinent part:

---

1. We heard oral argument on this case on April 12, 2005.

The Contractor shall properly protect [Chrysler's] and adjoining property from injury and, except as hereinafter provided in the section entitled "Owner's and Contractor's Responsibilities for Fire and Extended Coverage Insurance Hazards[,"] shall, at his expense, make good any damage to same without delay.

Appellant's App. at A0324. The "Owner's and Contractor's Responsibilities for Fire and Extended Coverage Insurance Hazards" section ("Paragraph 30") stated,

(a) [Chrysler] will assume the risk of loss and/or damage to the work performed and materials delivered to the site of the project which are to be included in the permanent construction or consumed in the construction process, whether or not installed, except as otherwise provided in paragraph (c) hereof. Contractor shall not be liable for loss or damage to such work or materials caused by fire or other perils normally insured against by "all risk" insurance policies; and the policy or policies maintained by [Chrysler] to cover such values will include (without specifically naming any party other than [Chrysler] in said policies) any interests of Contractors and Subcontractors in such work performed and material delivered. *[Chrysler] waives any right of recovery he may have against the Contractors and Subcontractors for damage to or destruction of the above property and of other property of [Chrysler] located at the construction locations, due to "all risk" perils.*

(b) Contractor shall be responsible for any and all loss of materials connected with the construction due to unexplainable disappearances, thefts or misappropriations of any kind or nature.

(c) The foregoing provision shall not operate to relieve the Contractors and Subcontractors of responsibility for any

loss or damage to their own or rented property or property of their employees of whatever kind or nature, nor to labor performed under this contract incident to the repair, replacement, salvage, or restoration of such items, including, but not limited to, tools, equipment, forms, scaffolding, and any temporary structures, including their contents. [Chrysler] shall in no event be liable for any loss or damage to any of the aforementioned items, or the work connected with the aforementioned items, or any other property of Contractors and Subcontractors, or employees, agents or servants of same, which is not to be included in the permanent construction or consumed in the construction process. The Contractor and Subcontractors hereby waive any rights of recovery they may have against [Chrysler] for damage or destruction of their own property or property of their employees of whatever kind or nature.

Appellant's App. at A0329 (emphasis added).

Moreover, the contract included the following section, entitled "Contractor's Liability for Bodily Injury, Sickness, Disease and Property Damage and Insurance," in pertinent part:

The Contractor shall assume all risk of damage to property or of bodily injury, sickness or disease of persons (including death resulting at any time therefrom) used or employed on or in connection with the work, and of all damage to property or of bodily injury, sickness or disease of persons (including death resulting at any time therefrom) wherever located, resulting from or arising out of any action, omission or operation under the contract or in connection with the work.

The Contractor shall protect, defend, hold harmless and indemnify [Chrysler]

from and against any and all loss, cost, damage, expense, claims or legal actions, whether groundless or not, arising out of the bodily injury, sickness or disease (including death resulting at any time therefrom) which may be sustained or claimed by any person or persons, and the damage or destruction of any property, including the loss of use thereof, arising out of or related to the performance of any work in connection with this Contract, including any extra work assigned to the Contractor in connection therewith, based upon any act or omission, negligent or otherwise, of (a) the Contractor or any of its employees, agents, or servants, (b) any Subcontractor of the Contractor or any employees, agents, or servants of such a Subcontractor, and/or (c) any other person or persons, including [Chrysler], or any employees, agents or servants of [Chrysler].

Appellant's App. at A0330.

Finally, the contract included the following section, entitled "Contractor's Responsibility":

The Contractor shall be responsible for his work and every part thereof and for all materials, tools, appliances and property of every description used in connection therewith.

Except as otherwise provided in [Paragraph 30], and Contractor assumes all risks, hazards and conditions in connection with the performance of the contract, and even if the performance of the contract involves a greater expenditure of money than the Contractor expected at the time of bidding, no allowance will be made on account thereof, and the Contractor shall continue with and complete the work.

Appellant's App. at A0332.

In order to complete the work, Graves leased a 250 ton Link Belt lattice truck crane with a 300–foot boom from Marlin, a business involved in leasing heavy industrial equipment. On June 2, 1998, a crane operator from Marlin was in the process of relocating the leased crane when it toppled over, and its boom, jib, and "headache ball" crashed through the roof of Chrysler's transmission plant, causing extensive damages and personal injuries.

Chrysler subsequently sued Graves and Marlin, asserting claims for negligence, breach of contract, breach of implied warranty, and gross negligence against both Graves and Marlin, and a claim for products liability against Marlin. Graves and Marlin thereafter filed motions for summary judgment, arguing, *inter alia*, that Chrysler waived any right to recovery for personal injuries and damages to its transmission plant under Paragraph 30 of the construction contract. Judge Dennis Parry denied Graves and Marlin's motions, concluding:

Court, having taken under advisement all Motions for Summary Judgment, now finds that in all cases there are material issues of fact to be determined by the trier of fact, such as ... whether or not, as relates to the contract provisions of indemnity, that the incident occurred, with damages to property, that was within the "construction location."

Due to the close proximity of the casting plant and the transmission plant, it is a question of fact to be determined whether the damage was within the "construction location."

The court agrees with [Chrysler] that Paragraph 30 of the contract is an ineffective waiver unless the question of fact as to the "construction location" is determined in favor of [Graves and Marlin]. If the trier of fact should determine that the location of the accident was in fact within the "construction location[,"] then the court believes that the contract pro-

hibits [Chrysler] from recovery, however, such fact is to be determined other than by Motion for Summary Judgment.

Therefore, all Motions for Summary Judgment are overruled and denied.

Appellant's App. at A0304.

While the instant case was still pending, Judge Parry retired from the bench, and this case was assigned to Judge Michael Krebes. On April 1, 2004, Graves and Marlin filed a joint motion for summary judgment, again asserting that, pursuant to Paragraph 30, Chrysler waived any right to recovery for personal injuries and damages to its transmission plant. After a hearing, Judge Krebes granted the joint motion for summary judgment, concluding, in pertinent part:

In essence, the contract made Chrysler responsible for damage to its property at the construction location and Graves responsible for damage to Chrysler property elsewhere. Graves and Marlin argue that the term "construction location[,"] as used in the contract between the Parties, should be given its usual and common meaning-construction location is wherever the men and equipment used to perform the construction are situated-and if that meaning is attached, that they are not liable to Chrysler for any damages resulting from the incident of June 2, [1998]. Chrysler argues that the term "construction location[,"] which it concedes is not defined in the contract itself nor under either Michigan (as specified in the contract) or Indiana case law, should be interpreted to essentially divide its manufacturing complex into two distinct parts-the Casting Plant and the Transmission Plant-and that the Casting Plant is the construction location and the Transmission Plant is not; therefore, Graves and Marlin are liable for damages to the Transmission Plant,

but not for any damage to the Casting Plant.

The Parties have, at length, debated the merits of their respective positions: Chrysler argues that the Casting and Transmission Plants have different addresses, have different management structures, and perform different functions; Graves and Marlin argue that the plants are both involved in the manufacture of parts for, and the assembly of, automobile transmissions, share a common wall, and are connected by pedestrian walkways which allow employees to move freely between them. The Court regards these arguments as legal hair-splitting. Prior to hearing, Chrysler relied on the Affidavit of Mark Pitchford as extrinsic evidence of the Parties' intent and subsequent to hearing submitted the Affidavit of Darryl Schneider for the same purpose. The Court need not consider either affidavit as the Court rules that this apparent ambiguity can be reconciled from a reasonable interpretation of the contract.

It is clear from the contract itself that the Parties to it-Graves and Chrysler-intended to apportion the responsibility for potential damages between them; no other interpretation is possible. The contract required Chrysler to waive any claims against Graves for damages at the construction location while allowing Chrysler to pursue claims against Graves for damages caused by Graves at other areas of the complex. The contract called for the upgrade of a ventilation system which entailed the use of the mobile crane to raise ventilation units to the roof of the structure; the accident occurred while the mobile crane was being moved from the north to the south side of the building. Since the work called for by the contract required Graves to employ the mobile crane with a 300-foot boom, the location of the mo-

bile crane and the surrounding area defined by a 300–foot radius is the construction location, that area where Graves was performing the work that it contracted to do.

The Court, therefore, finds that there is no genuine issue of material fact and that Graves and Marlin are entitled to summary judgment as a matter of law.

Appellant's App. at A0030–33. Chrysler now appeals. Additional facts will be provided as necessary.

### Discussion and Decision[2]

### I. Standard of Review

■ On appeal from a grant of summary judgment, we use the same standard as the trial court. *Burns v. Hatchett,* 786 N.E.2d 1178, 1180 (Ind.Ct.App.2003), *trans. denied.* We construe all facts and reasonable inferences to be drawn therefrom in favor of the non-movant. *Id.* When there is no genuine issue of material fact and the non-movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Id.* A genuine issue of material fact exists where a fact concerning an issue which would dispose of the litigation is in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Jackson v. Jones,* 804 N.E.2d 155, 158 (Ind.Ct.App.2004). Where the trial court has entered findings of fact in its summary judgment order, as it did here, we may use those findings to aid our interpretation of the trial court's decision, but those findings do not control us. *Circuit City Stores, Inc. v. American Nat. Ins. Co.,* 779 N.E.2d 62, 66 (Ind.Ct.App.2002).

### II. Summary Judgment Proper

■ Chrysler contends, and Marlin agrees, that the phrase "construction locations" is ambiguous. Nonetheless, the trial court did not err in granting summary judgment in favor of Graves and Marlin because the undisputed extrinsic evidence presented demonstrates that the transmission plant was a "construction location" under the contract.

■ Under Michigan law, a cardinal rule when dealing with contract interpretation is to determine the intent of the parties. *Old Kent Bank v. Sobczak,* 243 Mich. App. 57, 620 N.W.2d 663, 667 (2000), *appeal denied.* "To do so, we read the agreement as a whole and attempt to apply the plain language of the contract itself." *Id.* The construction of the terms of a contract is generally a question of law. *D'Avanzo v. Wise & Marsac, P.C.,* 223 Mich.App. 314, 565 N.W.2d 915, 917 (1997), *appeal denied.* Because we review questions of law *de novo,* we give no deference to the trial court's interpretation of the contract. *Circuit City Stores, Inc.,* 779 N.E.2d at 66. Where a contract's meaning is obscure and extrinsic facts are needed in order to determine its construction, the question of interpretation should be submitted to a jury. *D'Avanzo,* 565 N.W.2d at 917. Therefore, a trial court may determine the meaning of the contract in a summary judgment disposition *only* when the contract terms are unambiguous. *Id.* at 917–18. "A contract is ambiguous if the language is susceptible to two or more reasonable interpretations." *Id.* at 918. In such an instance, extrinsic facts are

---

**2.** The contract contains the following provision: "THE TERMS AND PROVISIONS OF THIS AGREEMENT SHALL BE INTERPRETED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF MICHIGAN, UNITED STATES OF AMERICA." Appellant's App. at A0161. All parties apparently agree that Michigan law controls the interpretation of the contract, and Indiana law governs the procedural aspects and the standard of review.

needed in order to determine the intent of the parties; therefore, summary judgment is usually inappropriate. *Id.* However, when the extrinsic facts are undisputed, the construction of a contract becomes a question of law for the court. *Reinforced Concrete Co. v. Boyes,* 180 Mich. 609, 147 N.W. 577, 579 (1914).

The pertinent provisions of the contract in the instant case, when read together, placed the burden on Graves and Marlin to protect Chrysler's property and to assume responsibility for any damage caused to Chrysler's property, with the only exception being under Paragraph 30. Paragraph 30 stated, in pertinent part, "[Chrysler] waives any right of recovery [it] may have against the Contractors and Subcontractors for damage to or destruction of ... other property of [Chrysler] located at the construction locations, due to 'all risk' perils." Appellant's App. at A0329.

The undisputed extrinsic facts show that the parties' intent was for Chrysler's insurer to cover any damage that might have occurred in the area where the construction was being performed. In fact, Chrysler states that the intent of the parties in including Paragraph 30 in the contract was to reflect that Chrysler's insurer would insure the work that was done and the materials that were installed, and would cover damages from any accidents that might have happened within the construction zone. The crane was moved for the purpose of completing the construction. Thus, the crane toppling over while being moved was an accident that happened while Graves was performing the ventilation upgrade. Simply put, the phrase "construction locations" includes the locations where the construction took place. When the crane toppled over onto the transmission plant as it was being moved during construction, the transmission plant was within the "construction locations" under the contract because the crane was in a location where the construction was taking place. Therefore, the trial court did not err in granting summary judgment in favor of Graves and Marlin.[3]

### III. Waiver of Gross Negligence

■ Chrysler finally contends that *assuming arguendo* that the waiver clause in Paragraph 30 was applicable to the damage caused to the transmission plant, the trial court nonetheless erred in granting summary judgment in favor of Graves and Marlin on Chrysler's gross negligence claims. We agree.

■ Under Michigan law, a party may not contract against liability for his own gross negligence. *See, e.g., Klann v. Hess Cartage Co.,* 50 Mich.App. 703, 214 N.W.2d 63, 65 (1973); *Shelby Mut. Ins. Co. v. City of Grand Rapids,* 6 Mich.App. 95, 148 N.W.2d 260, 262 (1967) ("While the general rule appears to be that a party may contract against liability for harm caused by his negligence in performance of a contractual duty, he may not do so with respect to his gross negligence."). Marlin concedes that this is the law in Michigan, but, citing to *Earl v. American States Preferred Ins. Co.,* 744 N.E.2d 1025 (Ind.Ct.App.2001), *trans. denied,* Marlin argues that "Chrysler fails to designate any evidence to demonstrate that the exception relied upon by Chrysler applies to this case." Brief of Appellee Marlin at 24.

---

**3.** Because we hold that the trial court did not err in granting summary judgment in favor of Graves and Marlin, we need not address whether the trial court gave the phrase "construction locations" its ordinary and plain meaning. Furthermore, the undisputed extrinsic evidence presented demonstrates that the intent of the parties under the contract was to consider the transmission plant as a "construction location"; therefore, Paragraph 30 was a clear and unequivocal disclaimer of liability.

*Earl,* however, is inapposite because it dealt with the issue of whether a nonmovant in a summary judgment proceeding designated any evidence to establish that he fell within an exclusionary clause in an insurance policy. Here, Chrysler is not contending that it fell within an exception within the contract; instead, Chrysler is arguing that under Michigan law, a party cannot contract against liability for his own gross negligence, regardless of what the contract provision may have stated. Chrysler designated as evidence the construction contract between itself and Graves, which included the waiver clause in Paragraph 30. There is nothing more that Chrysler needed to designate into evidence. Therefore, regardless of the interpretation of the waiver clause in Paragraph 30, we must reverse the trial court's grant of summary judgment in favor of Graves and Marlin as to Chrysler's gross negligence claims.

*Conclusion*

Accordingly, because the parties agreed we hold that the phrase "construction locations" is ambiguous; however, the undisputed extrinsic evidence presented supports the trial court's grant of summary judgment in favor of Graves and Marlin. Therefore, we affirm the trial court's decision with respect to that issue. However, the trial court erred in granting summary judgment in favor of Graves and Marlin on Chrysler's gross negligence claims. Thus, we reverse the trial court's decision on that issue and remand this cause to the trial court for further proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

RILEY, J, and CRONE, J., concur.